| | |
|---|---|
| WILLIAM TERRY SMITH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARION COUNTY, TENNESSEE and ) <br> JAMES H. HAWK, ) <br> in his individual capacity, ) <br> ) <br> Defendants. ) | No.: 1:20-CV-165-TAV-CHS |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on defendants' Motion for Summary Judgment [Doc. 17]. Plaintiff filed a response [Doc. 21]. Defendants did not reply, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a), (c). However, the Court permitted by order [Doc. 22] the parties to provide supplemental briefing [Docs. 23, 27–30] regarding plaintiff's Tennessee Public Protection Act claim, and that briefing has been filed. Accordingly, the motion is now ripe for resolution.

For the following reasons, defendants' motion [Doc. 17] is **GRANTED in part** and **DENIED in part**. Specifically, Count Four of the complaint (plaintiff's First Amendment claim) is **DISMISSED**. Counts One, Two, and Three will remain pending.

I.   **Background**

Plaintiff was employed by Marion County, Tennessee in various positions, including Assistant Road Superintendent and acting Road Superintendent [Doc. 1-1 ¶ 7]. Defendant Hawk was Road Superintendent and plaintiff's superior for the times at issue

[*Id.* ¶¶ 7–8]. Pertinently, plaintiff alleges Defendant Hawk made various statements and took various actions to discourage plaintiff from running for Road Superintendent in 2020 [*Id.* ¶¶ 10–13]. For example, plaintiff alleges he was "removed from his position" at Marion County, Tennessee Highway Department, demoted, "harassed, and retaliated against" "based upon Plaintiff's political activities, affiliation, and potential candidacy" [*Id.* ¶¶ 45, 50]. Plaintiff then filed this complaint, asserting various causes of action under several Tennessee statutes and provisions of the United States and Tennessee Constitutions [*Id.* ¶ 2]. The Court previously dismissed Counts Five and Six of the complaint [Doc. 15]. Defendants now seek to dismiss the remainder of the complaint [Doc. 17].

## II.  Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court must draw "all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party bears the burden of establishing that no genuine issues of material fact exist and may meet this burden by affirmatively proving their case or by highlighting the absence of support for the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations."

*Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citation omitted). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record, including depositions, documents, affidavits, and other materials, upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c)(1)(A). There must be more than a "mere scintilla of evidence" to withstand a motion for summary judgment. *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007) (citation omitted). And any genuine issue of fact must be material; that is, it must involve "facts that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. The Court may not weigh the evidence or assess credibility; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the nonmovant. *Id.* at 249. If a reasonable juror could not find for the nonmovant, the Court must grant summary judgment. *See Celotex*, 477 U.S. at 323.

### III.  Analysis

There are four remaining causes of action: (1) age discrimination under the Tennessee Human Rights Act; (2) hostile work environment under the Tennessee Human Rights Act; (3) retaliation under the Tennessee Public Protection Act; and (4) a First Amendment claim [Doc. 17 p. 1]. Defendants seek summary judgment as to all claims because: (1) all claims are barred by the applicable statutes of limitations; (2) plaintiff cannot prove the causation element of the retaliation claim, and (3) plaintiff cannot

3

establish a policy, practice, or custom as to the First Amendment claim [*Id.*]. The Court will analyze each argument in turn.

## A. Statutes of Limitations

Defendants argue that all claims are barred by the expiration of the applicable statute of limitations [Doc. 18 pp. 5–10]. Defendants note the applicable statute of limitations for each claim is one year. T.C.A. § 4-21-311(d) (2011) (Tennessee Human Rights Act); T.C.A. § 28-3-104(a)(1)(A) (2017) (Tennessee Public Protection Act); T.C.A. § 28-3-104(a)(1)(B) (2017) (First Amendment); *see also Nunn v. Tenn. Dep't of Corr.*, 547 S.W.3d 163, 178 (Tenn. Ct. App. 2017) (holding that § 1983 claims are subject to a one-year statute of limitations under Tennessee Code Annotated § 28-3-104(a)(1)(B)). Defendants posit that the date that triggered the statutes of limitations for all claims is April 12, 2019, which was the date of plaintiff's demotion and change in job requirements and therefore when he should have known of the alleged wrongful conduct [Doc. 18 pp. 5–10].[1] On defendants' timeline, then, plaintiff was required to file his complaint by

---

[1] Plaintiff argues that defendants claim April 18, 2019, is the triggering date for the TTPA claim [Doc. 21 p. 10]. However, defendants identify this date only in furtherance of their arguments regarding the elements of a retaliation claim [Doc. 18 pp. 11–12]. Additionally, defendants briefly suggest the triggering date for the statute of limitations for the First Amendment claim was "as early as" in February 2019 as Defendant Hawk "brought up discussions regarding the election" at that time [*Id.* at 6–7, 9]. In support, defendants cite interrogatory answers and the complaint and argue they provide this timeline [*Id.*].

However, the interrogatories do not mention February 2019, and defendants provide no further guidance as to how the allegations in the complaint support the triggering of the statute of limitations in February. Moreover, defendants later aver that as to the First Amendment claim, the statute of limitations was triggered "no later than April 12, 2019" [*Id.* at 9–10]. Accordingly, the Court will consider April 12, 2019, as the date defendants suggest is the triggering date for all claims.

4

April 12, 2020. Plaintiff counters that the triggering date for all claims was June 10, 2019, his last day of work [Doc. 21 pp. 3, 6, 8, 11], and this date would cause the statutes of limitations to expire on June 10, 2020. The complaint here was filed on May 7, 2020 [Doc. 1-1 p. 2].

The Court need not address the parties' arguments on the merits because even under defendants' timeline, the complaint was timely filed. Tennessee Code Annotated § 28-1-116 provides:

> In the event that a duly authorized member of the appellate judiciary enters an order declaring a *disaster* pursuant to the Tennessee supreme court rules, . . . *all applicable statutes of limitation* and . . . repose *shall be extended* . . . by the same number of days by which other applicable filing deadlines are extended.

T.C.A. § 28-1-116 (2008) (emphasis added). On April 24, 2020, the Supreme Court of Tennessee issued an "Order Modifying Suspension of In-person Court Proceedings and Further Extension of Deadlines" due to the COVID-19 pandemic. *In re Covid-19 Pandemic*, No. ADM2020-00428, 2020 Tenn. LEXIS 717 (Tenn. Apr. 24, 2020). The Tennessee Supreme Court held that the COVID-19 pandemic constituted a "disaster" within the meaning of Tennessee Code Annotated § 28-1-116 and therefore that "[s]tatutes of limitations . . . that would otherwise expire during the period from Friday, March 13, 2020, through Sunday May 31, 2020, are hereby extended through Friday, June 5, 2020." *Id.* at *6.

5

As noted, under defendants' timeline, plaintiff would have been required to file the complaint, at the latest, by April 12, 2020. This date falls within the range of dates that the Tennessee Supreme Court order extended through June 5, 2020. Therefore, even under defendants' timeline, the complaint was timely filed on May 7, 2020. On plaintiff's account, it was timely filed even without the Tennessee Supreme Court order.

Consequently, the Court finds plaintiff's claims are not time-barred.

### B.     Retaliation Claim

The Court now turns to plaintiff's retaliation claim under the Tennessee Public Protection Act ("TPPA"). The procedural history regarding this claim is extensive.

Plaintiff argues defendants violated the TPPA because Defendant Hawk retaliated against plaintiff after plaintiff reported to the Tennessee Comptroller's office that Defendant Hawk was engaging in illegal activities [Doc. 1-1 ¶ 34]. In defendants' memorandum [Doc. 18], defendants argue they are entitled to summary judgment as to plaintiff's TPPA claim [Doc. 17 p. 2]. Defendants reason that plaintiff cannot prove his TPPA claim as a matter of law because: (1) plaintiff voluntarily retired as opposed to being fired; and (2) plaintiff's whistleblowing was not the cause of his termination [Doc. 18 p. 10].

First, defendants argue that Defendant Hawk did not in fact terminate plaintiff's employment in retaliation; rather, plaintiff announced he was going to retire in April 2019, and therefore, he terminated his employment voluntarily rather than as a result of retaliation

6

[*Id.* at 11–12]. Defendants highlight that plaintiff discussed the possibility of retiring even before his job changes and that he had submitted his retirement benefits application on April 18, 2019, which was two months before his last day of employment [*Id.* at 11]. Second, defendants argue that Defendant Hawk could not possibly have retaliated against plaintiff because Defendant Hawk did not even learn that plaintiff filed the complaint with the Tennessee Comptroller until July 25, 2019, which was after plaintiff's last day of employment on June 10, 2019 [*Id.* at 11]. In support, defendants cite affidavits from Defendant Hawk and Karen Campbell, who handled plaintiff's application for retirement benefits [*Id.*].

In response, plaintiff argues that he actually filed his complaint with the Tennessee Comptroller in February 2019 [Doc. 21 pp. 8–9]. Plaintiff further notes that an auditor from the Tennessee Comptroller met with Defendant Hawk "approximately a month later" [*Id.* at 9], presumably to discuss plaintiff's complaint. In support, plaintiff provides a three-paragraph affidavit [Doc. 21-1]. Plaintiff also avers that while he retired rather than being fired, he was "constructively discharged," and such constitutes a "termination" under the TPPA [Doc 21 p. 10].

Plaintiff also requested additional time for discovery as to the TPPA issue before the Court addressed defendants' motion [*Id.* at 9–10]. The Court granted this request and

7

allowed "the parties to file supplemental briefs on this issue" [Doc. 22].² On the same day, plaintiff filed a supplement requesting additional time for the parties to obtain additional records from the Tennessee Comptroller [Doc. 23], and on July 27, 2021, the Court by docket notation permitted this extension.

On August 20, 2021, defendants filed a supplemental brief to their motion for summary judgment [Doc. 27].³ The supplemental brief notes that defendants received the

---

² The filings make clear that plaintiff's request for additional discovery and the Court's granting of that request was limited to the TPPA issue [*See* Doc. 21 pp. 9–10; Doc. 22.; Doc. 23 p. 1 ("Plaintiff's TPPA claim is the only claim that plaintiff sought additional time through discovery to respond.")]. The Court has not permitted the parties to file additional briefing as to any other claim. Yet defendants' supplemental brief [Doc. 27], plaintiff's supplemental response [Doc. 29], and defendants' supplemental reply [Doc. 30] all, in part, address other claims. Specifically, defendants argue that plaintiff effectively abandoned all claims except his age discrimination claim by noting in his deposition that he would have been terminated if he did not retire because of his age [Doc. 27 pp. 5–9]. And, plaintiff addresses the statutes of limitations issue and defendants' age discrimination argument [Doc. 28 pp. 1–3].

While the Court allowed the parties to submit supplemental briefs, it affirmatively limited additional briefing to the TPPA issue only [*See* Doc. 22]. Therefore, the Court will not consider either parties' arguments in the supplemental filings that address the other claims. *See* E.D. Tenn. L.R. 7.1.

³ In defendants' supplemental reply [Doc. 30], defendants suggest that plaintiff objected to defendants' supplemental brief [Doc. 27] as untimely in their supplemental response [Doc. 29]. The Court has reviewed plaintiff's supplemental response, and it does not contain any such argument.

Even if plaintiff had so objected, the Court would nevertheless consider defendants' supplemental brief and corresponding exhibits [Docs. 27–28]. It is true that defendants filed their supplemental brief on August 20, 2021, which is after August 16, 2021, the date by which the Court required plaintiff to file its supplemental brief. However, defendants' filing was never intended to be the initial supplemental brief; instead, it was intended to be a response to plaintiff's supplemental brief [*See* Doc. 22]. Yet plaintiff never filed a supplemental brief despite being the party who requested the extension for additional discovery and briefing in the first place.

Assuming plaintiff had filed a supplemental brief on August 16, 2021, as he requested, defendants' August 20, 2021, filing would have been timely. Accordingly, because the Court finds that defendants' supplemental brief was timely, the Court need not modify the scheduling order as defendants request [Doc. 30] to permit additional discovery so that the Court can consider defendants' exhibits. Further, for the reasons discussed *infra*, the Court finds that even considering these documents, defendants are still not entitled to summary judgment.

8

records from the Tennessee Comptroller and attached them as exhibits [*Id.* at 1–2]. Defendants highlight that these records indicate that plaintiff did not report Defendant Hawk's alleged illegal activities until April 4, 2019, and that the Comptroller's office never contacted Defendant Hawk about the complaint until July 25, 2019 [*Id.* at 2]. Because this date was after the date plaintiff terminated his employment in June 2019, defendants argue that it is undisputed that Defendant Hawk had no knowledge of the complaints until July 2019 and therefore could not have retaliated against plaintiff while he was employed [*Id.* at 2–3].

Defendants further highlight that plaintiff admitted in his deposition—the transcripts of which defendants attached as exhibits—that plaintiff did not know when Defendant Hawk learned of plaintiff's complaint to the Tennessee Comptroller [*Id.* at 3]. Defendants explain that plaintiff confirmed that he only assumed that the auditor who visited the Tennessee Comptroller in March did so to investigate plaintiff's complaint, and plaintiff admitted that auditors often visit the Marion County, Tennessee Highway Department for various reasons [*Id.* at 4]. Therefore, defendants claim that "Plaintiff's affidavit regarding being told in March 2019 that the Comptroller's office had been to Marion County Highway Department . . . in response to Plaintiff's complaints[] is not accurate" because the Tennessee Comptroller did not in fact visit Defendant Hawk until July 2019 [*Id.*].

The TPPA, as effective in 2019 provides, "No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal

9

activities." T.C.A. § 50-1-304(b) (2014). For a plaintiff to maintain a TPPA claim, the plaintiff must show: (1) an at-will employment relationship existed; (2) the employee was terminated; (3) the employee was terminated because the employee attempted to exercise a statutory or constitutional right, or for any other reasons that violate public policy; and (4) the plaintiff's whistleblowing activity was the sole cause of the termination. *Treadaway v. Big Red Powersports, LLC*, 611 F. Supp. 2d 768, 783 (E.D. Tenn. 2009).

The Court finds defendants are not entitled to summary judgment as to plaintiff's TPPA claim. First, defendants suggest that as a matter of law plaintiff was not "terminated" within the meaning of § 50-1-304(b) because he voluntarily retired rather than being fired, as evidenced by the fact that he took vacation prior to his demotion and change in job duties to check on his retirement benefits and then filed his application for retirement benefits with Karen Campbell on April 18, 2019 [Doc. 18 p. 11; Doc. 19 pp. 16, 26]. But as plaintiff correctly notes, constructive termination is a basis for a TPPA claim, and therefore, a forced retirement as plaintiff alleges is sufficient to maintain a claim under the TPPA. *See White v. Fort Sanders-Park W. Med. Ctr.*, No. E2006-00330-COA-R3-CV, 2007 WL 241024, at *5 (6th Cir. Jan. 29, 2007).

What is more, the only evidence defendants cite in support of this argument is Defendant Hawk's and Karen Campbell's affidavits, which allege that plaintiff was considering retirement even before his adverse job changes and that he filed his retirement application shortly after the changes [Doc. 18 p. 11; Doc. 19 pp. 16, 26]. The Court finds this evidence is insufficient to support summary judgment. As noted, the Court must draw

10

all reasonable inferences in favor of the nonmovant. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). One reasonable inference from the evidence defendants have provided is that plaintiff submitted his retirement application because of his demotion and job change rather than because he intended to retire even before the job changes. Stated differently, it is reasonable to infer from defendants' evidence that plaintiff was considering retirement before the changes, but the changes were the deciding factor in his decision to retire.

Second, the Court finds there is a dispute of fact regarding whether plaintiff's whistleblowing actually caused his alleged constructive termination. As noted, plaintiff filed an affidavit with his response [Doc. 21-1]. In that affidavit, plaintiff alleges he made the complaint to the Tennessee Comptroller in February 2019 and that one month later, an auditor interviewed Defendant Hawk [*Id.*]. This contravenes defendants' contentions and related evidence that Defendant Hawk was not aware of the complaint until July 2019 [*See* Doc. 19 pp. 17, 27; Docs. 28-1–28-14]. It is true that defendants' contention that plaintiff's affidavit is "not accurate" in light of defendants' extensive evidence may lead a reasonable juror to find for defendants. But it is not the Court's role to make this type of credibility assessment at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A reasonable juror could find favor in plaintiff's testimony (consistent with his affidavit) that Defendant Hawk learned of plaintiff's complaint to the Tennessee Comptroller at the latest in March and demoted plaintiff and changed his job duties in response.

11

Therefore, defendants are not entitled to summary judgment regarding plaintiff's TPPA claim.

### C. First Amendment Claim

Defendants argue that the First Amendment claim against Marion County must be dismissed because plaintiff "does not even make an allegation that there is a policy within Marion County that resulted in the deprivation of his" free speech rights [Doc. 18 p. 12]. Instead, defendants assert plaintiff's complaint alleges it was Defendant Hawk's action of demoting plaintiff that caused the denial of his free speech [*Id.*]. Defendants note that plaintiff has the burden to allege and prove that the county had a policy or custom that caused the violation of his rights [*Id.*]. Having failed to meet that burden, defendants posit the claim must be dismissed.

Plaintiff responds that "Mr. Hawk espoused a policy that if anyone within the Department runs against the current Road Superintendent, he or she will be demoted or terminated" [Doc. 21 p. 12]. Plaintiff cites caselaw related to this issue and then states that Mr. Hawk had authority to terminate plaintiff, made threats of termination, and carried through with his threats [*Id.* at 14]. However, plaintiff only cites the complaint; he cites no evidence in the record [*Id.*].

As previously stated, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue of material

12

fact, a plaintiff must point to evidence in the record upon which a reasonable finder of fact could find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c)(1)(A).

The Court finds defendants are entitled to summary judgment as to plaintiff's First Amendment claim without addressing the merits. Defendants met their initial burden by suggesting that Marian County had no policy, practice, or custom of denying First Amendment rights and that defendants did not in fact deprive plaintiff of his First Amendment rights. And defendants supported their contention by citing Defendant Hawk's affidavit and Marion County, Tennessee Highway Department's Employee Handbook [Doc. 18 p. 13]. However, plaintiff has not cited any evidence that would permit a reasonable finder of fact to find in his favor. Plaintiff's memorandum only cites caselaw and the complaint [*See* Doc. 21 pp. 11–14]. Without evidence that a reasonable juror could find for plaintiff as the nonmovant, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323; *see also Tullis v. UMB Bank, N.A.*, 423 F. App'x 567, 568, 570–71 (6th Cir. 2011) ("[C]ites to the complaint are all we have here. Those are not enough to create a genuine issue of material fact . . . ."). Accordingly, the First Amendment claim against Marion County is **DISMISSED**.

### IV. Conclusion

For the reasons set forth above, defendants' motion for summary judgment [Doc. 17] is **GRANTED in part** and **DENIED in part**. Count Four of the complaint

13

(plaintiff's First Amendment claim) is **DISMISSED**. Counts One, Two, and Three will remain pending.

Additionally, the Court is of the opinion that ordering this case to mediation at this time will promote judicial economy and facilitate a possible resolution in this action. Accordingly, pursuant to Local Rule 16.4, the Court hereby **ORDERS** the parties to mediate this action in good faith within **ninety (90) days** of the entry of this Order. *See* E.D. Tenn. L.R. 16.4(a) ("With or without the agreement of the parties in any civil action, except those exempted pursuant to Local Rule 16.3, the Court may refer all or part of the underlying dispute to mediation pursuant to this Local Rule."). Within **seven (7) days** following the conclusion of mediation, the mediator shall **FILE** a report with the Court stating the outcome of the mediation, as contemplated by Local Rule 16.4(m).

The Court further **DIRECTS** that on or before **December 29, 2021**, the parties **SHALL** file joint status reports to apprise the Court of whether their resolution efforts were successful, whether they require additional time to negotiate, or whether the parties wish to proceed to trial.

In light of the order of mediation, the trial and final pretrial conference scheduled for November 16, 2021 and November 9, 2021, respectively, are hereby **CANCELLED** and this action is **STAYED**.

ENTER

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

14